## ALICE K. AYERS *vs.* W. MAHUKA.

### EXCEPTIONS.

HEARING, JANUARY 8, 1894.    DECISION, FEBRUARY 2, 1894.

JUDD, C.J., BICKERTON AND FREAR, JJ.

An affidavit in support of a motion to open a default alleging that affiant "verily believed" that an answer had been mailed to the clerk is insufficient: the affidavit stating that defendant has a good and meritorious defense is insufficient. It should set out the facts relied upon in defense so that the Court can judge of the question of merits.

A letter was identified by a witness against plaintiff's objection. The letter was not admitted in evidence. Held, as the identification of the letter did no harm, it not being read to the jury, it is not reversible error.

An action for breach of promise of marriage admits of punitive damages for injury to feelings, affections and wounded pride which are within the sound discretion of the jury. The verdict for $400 where $5000 were claimed as damages does not of itself, considering the evidence, show that the jury acted with bias or partiality and is not ground for a new trial.

A person who stands in the relation of father to defendant, on the day before the trial of this case, asked for and obtained the names of the persons who had been summoned as jurymen, and endeavored to influence one in favor of defendant; (this juror having been afterwards drawn on the case and challenged) and was seen talking in a low tone of voice with another juryman whom he had sought out. who served on the case. The inference is not a violent one that he endeavored to influence the second juryman also, taken in connection with the fact that no explanation was offered as to the character of his conversations with the juror, and with his treating several of the jurymen to spirituous liquor. The circumstances disclose misconduct sufficient to warrant the Court in setting aside its verdict and ordering a new trial.

OPINION OF THE COURT, BY JUDD, C.J.

This is an action of assumpsit for damages for breach of promise to marry. It was tried at the last December Term

of the Circuit Court, Second Circuit, held at Lahaina, Maui. The damages laid were five thousand dollars. Process was served upon the defendant May 19th, 1893. On the 28th November, the plaintiff moved for an order declaring defendant in default, upon the clerk's certificate that defendant had failed to answer within twenty days after service. Default was ordered on the 9th December, at term, and the same day the Court, on motion by defendant to vacate the order of default supported by affidavits, set aside the default and allowed defendant to answer. The affidavits are in substance that defendant and his counsel depose that an answer was prepared within a few days after service, in Honolulu, and they "verily believe that it was mailed to the clerk of the Court" at Wailuku, Maui. An exception was taken to the granting of this motion, which is embodied in the plaintiff's bill of exceptions. The affidavits do not meet the requirements of the law in such matters. If the answer had been sent to an attorney or other person at Wailuku to be by him personally filed with the clerk, or if sent to the clerk by registered letter, or if a letter had been separately mailed, asking the clerk to acknowledge receipt of the answer, it would show the exercise of reasonable diligence. If this course had been followed the loss or miscarriage of the answer would have been made known to defendant's counsel in time to have rectified the matter. In the case before us there is the unsupported statement that defendant's counsel "verily believe" that the answer was sent by mail to the clerk. This falls far short of a deposition that counsel had mailed it personally.

"The affidavit to set aside a default must state that a default has been taken, show reasonable diligence, must set forth facts showing a good defense and not a mere conclusion of law; should also state the facts relied upon in such motion, so that the Court may judge of the question of merits," &c. 5 Encycl. Law, pp. 496z, 16 and 17, and cases there cited.

The affidavits before us do not show that the answer was

actually sent to the clerk or reasonable diligence in ascertaining if it had reached the clerk, or any excuse by way of mistake or accident why, if sent, it had not been received by the clerk. The affidavits are also insufficient in not disclosing the facts relied upon in defence. It is not sufficient to state that "defendant has a good and meritorious defense " without setting out what it is so that the Court can judge whether it is meritorious.

Power is given to the Judge or Court to open a default "in their discretion, for good and sufficient reasons." Sec. 1126, Civil Code. We do not deem the reasons in this case to be good and sufficient. Being in default the statute, Sec. 1127, Civil Code, directs the clerk "to enter the cause upon the calendar of assessments to be made *ex parte* at the term, upon the sole adduction of plaintiff's evidence, without admitting the defendant to rebut the same ";—only allowing defendant to cross-examine plaintiff's witnesses and to address the jury in mitigation of damages. But the default was opened and defendant put in testimony in defence which may have influenced the verdict. We sustain this exception, deeming the error sufficient upon which to order a new trial so that the case may be proceeded with, with defendant in default. We remark here that the Court, upon plaintiff's demand, should have signed the order declaring defendant in default upon the filing of the clerk's certificate of the default in answering, and should not have postponed doing so until the term had opened. See Sec. 1109, Civil Code.

Another exception is taken to the Court's allowing defendant to identify and give the date of a letter said to have been written by plaintiff's mother to defendant. The letter itself was thereafter ruled upon as not admissible and did not go to the jury. We do not consider this reversible error. It did plaintiff no harm.

A third ground of exception is that the Court refused to grant a new trial on the ground that the verdict was contrary to law and the evidence and the weight of evidence, and counsel for plaintiff urge that the verdict of the jury for

$400 upon a claim of $5000 damages, and upon a case where the contract of marriage was admitted and its breach proved, and where the defendant was shown to be .possessed of a handsome property, and nothing disparaging to the character of the plaintiff was brought out, shows either a disregard by the jury of the evidence or partiality and bias on their part.

In an action for breach of promise of marriage though nominally the damages are compensatory for the breach of the agreement, i. e. for the loss of marriage, it also admits of punitive damages for injury to feelings, affections and wounded pride.

Sedgwick, Damages, p. 368.

*Johnson vs. Jenkins*, 24 N. Y. 252.

The measure of damages is a question for the sound discretion of the jury as in other cases of personal tort. "In such cases the Court will refuse new trials for smallness of damages for the same reasons that prevail on questions of excessive damages. To entitle the application to succeed the jury must have clearly manifested an abuse of their powers." 1 Graham & Waterman, N. J. 447. This verdict does not seem to us to be so flagrant and unjust as to require the interposition of the Court—that is, the verdict rendered for $400 damages does not *per se* indicate partiality or misconduct of the jury. A fair and unprejudiced jury might come to the same conclusion as to the amount of damage to be awarded as the jury did in this case, and it might also award a greater sum. Within reasonable limits the amount of damage was within their discretion.

We overrule this ground of exception.

On the last ground advanced by the exceptions of misconduct of the jury we think a new trial should be ordered.

The case was tried on the 9th December, Saturday. It appears by the affidavit of Lukela Kulu that on the day previous to the trial a native named J. Kamahele came to deponent's house in Lahaina with a third party. Kamahele was one of the regular panel of jurors, and had been summoned from Wailuku where he resides. While there,

Kapuahiwa, who stands in the place of father to defendant, came to deponent's place to see Kamahele and his companion; Kapuahiwa shook hands with them and said to Kamahele that he had intended to go to Wailuku on the Claudine; then he continued the conversation with Kamahele in a low tone of voice. The deponent inferred from Kapuahiwa's manner that he was talking to Kamahele about this case which had been set for trial the next morning, and was trying to influence him in defendant's favor. This juror was sworn on his *voir dire.* He said he was a carpenter living at Wailuku. That he had not been approached in any way in reference to this case, only had heard of it (the case) recently, and knew of no reason why he should not sit on it. The fact that Kapuahiwa had talked with this juryman as deposed to by Lukela Kulu was not brought to plaintiff's or her counsel's notice until after the verdict. Undoubtedly if this had been known to them they could have challenged him, for, previous to Kamahele's examination John Kanakamaikai was sworn on his *voir dire.* He stated in substance that Kapuahiwa had talked with him on the previous day in the liquor saloon, Conway, another juror, being there also. Kapuahiwa paid for the drinks, then took him to the back part of the saloon and asked him to have a due regard for Mahuka's case—to let him go. "He first asked if I was a juryman. I told him yes, and then he commenced to talk to me and said he wanted to leave the case with me, &c. He asked me for the names of the jurors and I gave him the names of those who came from Wailuku. He said something like this,—it would be a good thing if I would remember Mahuka." The juror disclaimed any influence upon his mind by this talk of Kapuahiwa. He also said that Kapuahiwa treated him to drink again and stood treat for himself and a number of other persons who were in the saloon. Kanakamaikai was excused by consent of counsel on both sides.

Conway, a juror, testified to being treated by Kapuahiwa

on the same occasion as the last juror, though he did not know Kapuahiwa before this.

Kapuahiwa does not offer his affidavit to rebut these statements, nor does he or the juryman Kamahele explain the nature of their conversation if it was not as suspected by Lukela Kulu. One J. K. Kahookele was drawn as a juror in the case and answered on his *voir dire* that he had not formed or expressed an opinion in this case. " Q. Has anyone talked with you about this case or attempted to influence you? A. Somebody has talked with me and attempted to influence me. Q. Who is it? A. I know his voice, but I don't know his name. Q. Is he a young man or an old man. No answer. Q. Do you know where he lives? A. No. Q. Do you see him anywhere here? A. Not in this room. Q. Did they talk in favor of either side? A. They merely said that the case had been tried in Honolulu and brought up here. Q. Did you understand that, or did he say or do anything which led you to believe that he intended to influence your judgment in this case? A. No. Q. Did he know you as a juryman? A. Yes, he knew I was a juryman." After some other unimportant questions had been asked and replied to, the man said that he could try the case fairly for both sides, but he was challenged peremptorily by plaintiff. We have, in short, the facts that a person having a close connection with the defendant, and living with him as a father, with the knowledge that the Hawaiian jurors were summoned for the next day, and that the case in which he was interested was the first one to be tried, asking and obtaining the names of the jurors who were coming from the other side of the island, meeting and talking with two of them, John Kanakamaikai and Kamahele, and probably also J. K. Kahookele, treating to liquor several of the jurors, and in the case of J. Kanakamaikai, making improper efforts to influence him, which Kapuahiwa does not deny. The presumption is not a violent one that his conversation with J. Kamahele was of the same character as that with Kanakamaikai. Kapuahiwa, in treating the jurors to

liquor, did it undoubtedly for the purpose of obtaining their favor in the case. As was said by the court in *M. & O. R. R. Co. vs. Davis*, 130 Ill., 154. "The jury box must be free from improper influences. * * * If the administration of justice is to be kept pure and above reproach, every appearance of a want of impartiality on the part of juries must be discountenanced." In this case pending the trial after the evidence was closed, but before argument to the jury, the attorney for the plaintiff (who was the prevailing party) was seen drinking and "clinking" glasses in a public saloon with one of the jurors trying the case. So far as appeared, the only subject of conversation between the attorney and the juror, on the occasion, was some old litigation in which the juror's wife had been involved, and which had just been compromised, the same attorney having represented the adverse interest. It was held that the mere matter of association, under the circumstances, between the juror and the attorney, was improper, and was ground for reversal of the judgment.

*Stafford vs. The City of Oskaloosa*, 57 Ia., 748, is another case where the verdict was set aside for misconduct of a juror. Pending the trial a Sunday intervened, and the juror spent a night at the house of the prevailing attorney, who was an old friend of his. No conversation was had between them on the case, and both were men of high character, but the Court reversed the verdict in view of these circumstances, saying, that "to sanction the transaction would bring disgrace upon the administration of the law." In *Bradbury vs. Coney*, 62 Me., 225, the court said, "It is important that jurymen should be devoid of prejudice. It is hardly less so that they should be free from the suspicion of prejudice." See *Martin vs. Morebock*, 32 Ill., 485.

The books are full of cases treating of misconduct of juries, but the circumstances of each case must be considered by themselves as they present facts which are not likely to be exactly repeated in other cases.

Numbers of these cases are in reference to jurors, after

they have been impanelled in the cause.   In the case before
us the improper influences were exerted upon the jurors
before they were drawn; but we consider that this makes no
difference, for these men had been selected and summoned
for the term, and out of their number the jury in this case
was to be drawn.

Thompson and Merriam on Juries says (p. 416): "Where
the successful party is shown to have attempted by improper
means to influence the verdict in his favor, whether by
corrupting or intimidating particular jurors by arousing pre-
judice in their minds against the opposite party, or his cause,
or by undue hospitalities or civilities, the verdict will be set
aside, as a punishment to the offender and as an example to
others, without reference to the merits of the controversy,
and *without considering whether the attempt was successful or
not*."   We adopt this principle.

New trial ordered.

*J. A. Magoon* and *W. A. Kinney*, for plaintiff.

*A. Rosa* and *C. Creighton*, for defendant.