*Robertson & Wilder* for plaintiff.

*C. W. Ashford* for defendant.

---

## W. W. AHANA *v.* THE INSURANCE COMPANY OF NORTH AMERICA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 20, 1904.          DECIDED MAY 14, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In an action on a policy of fire insurance to which the defense was that the loss was caused by order of a civil authority, namely, the board of health, which by resolution condemned the buildings to be destroyed by fire because infected by bubonic plague, held

The board could execute its resolution through the fire department by in form authorizing as well as by in form ordering the latter to burn the buildings.

That a quorum of the board was present at the meeting at which the resolution was adopted appears from the fact that at least four of the seven members are mentioned in the minutes as having participated in the meeting.

The minutes of that meeting were properly admitted in evidence under the circumstances stated in the opinion although they were not signed.

To serve as a defense in a case of this nature, the action of the board neet not be lawful and justifiable. It is sufficient if the board had authority to order buildings burned when necessary for purposes within the scope of its duties and acted in this particular case officially and in good faith and within the apparent scope of its powers.

It is within the discretion of the trial court, not subject to review except in case of abuse, to reopen a case for the introduction of further evidence.

A new trial will not be granted because of an erroneous instruction to the jury when it appears that the instruction did not affect the verdict.

## OPINION OF THE COURT BY FREAR, C.J.

This is an action for $1,000 on a policy of fire insurance on two buildings that were burned, with other buildings, in what was known as block 9, in Chinatown, Honolulu, on January 16, 1900, the defense being, so far as need be considered on these exceptions, that the fire was caused by order of the board of health in the suppression of bubonic plague and so was a "loss caused directly or indirectly * * * by order of any civil authority", which is one of the losses excepted in the policy. The jury found for the defendant and the plaintiff brings here sixteen exceptions, which may be treated, as the plaintiff has treated them in his brief, under five heads.

1. The first exception was to the admission in evidence of a letter dated January 15, 1900, the day before the fire, from the president of the board of health to Andrew Brown, fire commissioner, as follows: "You are hereby authorized to destroy by fire all of the structures in 'Block No. 9'—bounded by Beretania, Maunakea, Pauahi and Smith Sts. This is in accord-

ance with a resolution of the Board of Health condemning the said structures as being unsanitary and infected by plague and incapable of being disinfected by any other means than fire." The objection to this was that, since it merely authorized and did not order the burning of the buildings, it was a delegation of power from the board of health to the fire commissioner which, it is contended, was unlawful. The board had already passed the resolutions, as will appear under the next point, condemning the buildings. It would hardly be expected to destroy the buildings itself. It would naturally act through others in carrying out its resolutions of this kind. The fire department was the most appropriate body to perform this function, especially with a view to preventing a spread of the fire. The board had no authority over the fire department. It could not compel it to act. But it could ask its cooperation and give it as much authority by in form authorizing it as by in form ordering it to act. If the fire department accepted and acted on the request of the board it was sufficient to make its act that of the board, so far as the question now raised is concerned. It was immaterial through whom or by what means the board acted in carrying out its resolution. The board did not attempt or purport to delegate to the fire department or the fire commissioner the discretion as to whether the buildings should be burned.

3, 4, 5, 6, 7, 8. These exceptions raise the question of the admissibility in evidence of a book of minutes of meetings of the board of health for the purpose of showing the resolutions condemning the buildings in question. A number of the objections made to the admission of these records relate to the legality of the action of the board in condemning these buildings and will be considered under other exceptions. One objection was that there was not a quorum present at the meeting of January 10, 1900, at which these buildings were condemned. The minutes of that meeting besides stating in general terms that "the board met" etc., shows that at least four members participated by making or seconding motions and presumably there was a fifth member presiding. Four constituted a quorum, as the

board consisted of seven members.   Other objections were that the minutes of that meeting were not signed by anyone, that they were not kept by anyone authorized to keep them, and that they were not the original minutes, being in typewriting.   The book is a bound volume of typewritten minutes, signed at the end by the secretary of the board.   The minutes of each meeting are not signed.   The volume is labeled on its back "minutes of the board of health meetings, Jan. 1, 1899, to April 30, 1900", and on its first page the same except that "re bubonic plague" is inserted after "meetings".   It was produced by the chief health officer of the board of health, who testified that it was the official record of the proceedings of the board of health during the period indicated; that these minutes were kept by the secretary, that the witness was present at the meeting in question and remembered the passage of the resolution, that the minutes of that meeting were taken by the assistant secretary; that for at least ten years it had been the practice not to sign the minutes, that they are typewritten and approved by the board before they are put into the book.   The minutes of the meeting of April 3, 1900, state that the board approved the minutes of the meeting in question.   There is no statutory provision as to how the minutes should be kept.   In our opinion, these objections to the admissibility of the minutes were not well founded.   Another objection was that it was not shown that the meeting in question "was properly set or organized by any process of the board of health or by any person who appeared to have authority of the board of health", by which is meant, as we understand, that it was not shown that the meeting was properly called or called for this purpose.   The contention is that this appears from the recital in the minutes that the board met "pursuant to the resolution passed at yesterday's meeting to visit and formally decide what to do with block 10," and that no such resolution appears in the minutes of the meeting of the day before.   Without going into the question whether these things would be sufficient to invalidate the proceedings as between the board and one affected by its action, it is sufficient to say that the action appears

to have been taken by the board or a quorum thereof as such and in the usual manner, and that was all that was required for the purposes of a case of this kind, as will appear under the next point.

4, 9, 10, 13, 14, 15. The argument under these exceptions is that the action of the board was unlawful and unjustifiable in that it was unnecessary to destroy the buildings, that they could have been put in good sanitary condition, that they were condemned without giving the owner an opportunity to be heard, etc. These arguments were considered and disposed of adversely to the plaintiff's contention in *Hawaii Land Co. v. Lion F. Ins. Co.*, 15 Haw. 164, where it was held that in a case of this kind the order of the civil authority need not be lawful or justifiable, but that it is sufficient if the civil authority may lawfully order buildings burned when necessary for purposes within the scope of its duties and acts in the particular case officially and in good faith and within the apparent scope of its powers.

2. When the defendant rested, the plaintiff moved for a directed verdict on the ground that the resolution of the board of health had not been shown. The defendant's counsel then stated that he had omitted to put the resolution in evidence and was under the impression that he had done so and asked that the case be reopened for that purpose, which was allowed and the plaintiff then took this exception. The reopening of a case for the introduction of further evidence is a matter within the discretion of the trial court and the exercise of such discretion will not be disturbed except in case of abuse—which does not appear here. *Herblay v. Norris*, 8 Haw. 335; *King v. Heleliilii*, 5 Haw. 16.

11. This exception was taken to the instruction of the court that "the plaintiff must prove that the peril assured against and not one of the causes excepted by the policy was the cause of the loss, otherwise your verdict must be for the defendant." If this means that the burden was on the plaintiff, after showing a loss by fire which was the peril insured against, to show further that the fire was not produced by one of the causes excepted in

the policy, it was erroneous. The only case cited in support of that view is *Pelican Ins. Co. v. Troy Coop. Ass., 77* Tex. 227, but in a later case in the same state the court of appeals declined to follow that case on the ground that if it went as far as contended it was bad law and contrary to the great weight of authority. *Burlington Ins. Co. v. Rivers, 28* S. W. 453. See also cases cited in 11 Enc. Pl. & Pr. 414, notes 1 and 3. The question then is whether the giving of this instruction was prejudicial or reversible error. While the presumption is that error was prejudicial, yet if the contrary clearly appears, there should be no reversal. Such we believe to be the case here. The jury decided the case on the theory that the burden was on the defendant to bring the case within the exception of a loss caused by order of a civil authority and found that it had affirmatively proved that. This is shown by the proceedings that took place after the jury returned into court for further instructions and finally by their verdict, which reads as follows: "We, the Jury, in the above entitled cause find for the Defendant in view of the facts presented by counsel more particularly the fact that the records of the Bd. of Health of the 10th of Jany. 1900 show that the resolution authorizing the destruction of Block 9 was duly passed by a quorum of the Board of Health there assembled." Why the jury did this we cannot say—whether because no prominence was given to the proposition set forth in this instruction or because the jury did not construe it in the way counsel now construes it, or because the jury acted under other instructions which were directly to the contrary and unambiguous, as for instance, "You are instructed that if there has been a failure of proof in this case on the part of the defendant to show that the property in question was destroyed by order of the civil authorities you must find for the plaintiff."

The exceptions are overruled.

*J. A. Magoon* and *J. Lightfoot* for plaintiff.
*Robertson & Wilder* for defendant.