## TERRITORY *v.* ROBERT WITT.

## No. 1468.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. F. ANDRADE, JUDGE.

ARGUED MAY 9, 1923.                    DECIDED MAY 21, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

EVIDENCE—*harmless error.*

There being uncontradicted evidence showing that certain automobile tires belonging to the government had been stolen, the testimony of a witness who had carted these tires from the neighborhood of the warehouse in which the tires were stored that in his opinion the articles stolen were taken from the government without right was harmless error.

SAME—*identity of alleged stolen articles.*

In a prosecution for receiving stolen goods, to wit, fifteen automobile tires, the evidence being that within a short time after the theft fifteen tires similar in make and size to those stolen were recovered, some in the possession of defendant and others in the possession of persons who had recently purchased them from defendant, the tires thus recovered were properly received in evidence although there was no direct evidence that they were the identical tires that had been stolen.

SAME—*adverse witness—inconsistent statements.*

A party producing a witness who in the opinion of the court proves adverse may be permitted to ask the witness whether he has not made inconsistent statements at other times and prove that he has made such statements.

SAME.

The admission of incompetent evidence for the prosecution in a criminal case is not prejudicial if the facts toward which it is directed were subsequently proved by similar evidence produced by the defendant.

CRIMINAL LAW—*receiving stolen goods.*

The evidence held sufficient to support a conviction for.

12

Opinion of the Court.

NEW TRIAL—*amended motion for.*

> An amended motion for a new trial filed after the expiration of the time allowed by section 2442, R. L. 1915, which amended motion sets forth a ground not contained in the original motion for a new trial, does not conform to the statute and should not be entertained by the trial court.

OPINION OF THE COURT BY LINDSAY, J.

Defendant was convicted upon a charge of receiving stolen goods, the goods alleged to have been stolen being fifteen automobile tires owned by the government of the United States. The case comes here upon exceptions which set forth that the trial court erred in sundry rulings with regard to the admission of evidence; in refusing to direct the jury to acquit defendant; in giving an alleged erroneous instruction; in denying defendant's motion in arrest of judgment; in denying defendant's motion for a new trial; and in denying defendant's amended motion for a new trial.

Exceptions 12, 13 and 14 are that the court erred in permitting the witness Hamlett to testify on behalf of the prosecution that the tires that were transferred to his truck and which he brought to Honolulu and delivered to defendant were taken from the government without right; and in permitting this witness to testify that in his opinion the tires were taken from the United States government without right because Sergeants King and Bramell knew they were government property.

The uncontradicted evidence showed that the United States government owned a large number of automobile tires and that on or about July 18, 1922, fifteen of these tires were stolen from the warehouse in which they were stored at Schofield Barracks, loaded onto a truck driven by the witness Hamlett, taken by him to Honolulu and delivered to defendant. Such being the case, the testimony of Hamlett that, in his opinion, the articles stolen were taken from the government without right was, at the

most, harmless, and could in no way prejudice the defendant. These exceptions are overruled.

Exception 15 is that the court erred in admitting in evidence fifteen tires over the objection of the defendant on the ground that there was no evidence showing that these tires were those that had been testified to as having been taken from the warehouse at Schofield. The evidence shows that Hamlett, a witness for the prosecution, and the defendant were ex-soldiers, who had known each other while in the army. Prior to July 19, 1922, Hamlett and defendant had either one or more conversations concerning the sale of automobile tires, which Hamlett told defendant were to come from Schofield. According to Hamlett, he asked defendant if he could "handle" these tires. Several sizes of tires were mentioned and defendant told Hamlett that he could not use certain sizes but that he could use tires of one size. At this conversation, no definite arrangements were made but Hamlett testified that "it was later arranged between Mr. Witt and myself that he could handle some 35x5, he didn't know how many, there was no definite amount mentioned." Hamlett further testified that it was arranged between himself and defendant that, upon a sale of the tires, defendant was to retain all he might get in excess of $25 per tire and that $25 per tire was to be divided equally between the witness and Sergeant King. The retail price for Goodyear tires in Honolulu at that time was $49.50 and the wholesale price $35.14. Following this arrangement defendant borrowed a Ford truck and turned it over to the witness Hamlett who went to Schofield from whence he returned on or about July 19, 1922, with fifteen 35x5 tires which he delivered at the home of defendant on Young street in this city. Nine tires of this size were found by the police at defendant's residence, the defendant at that time saying that he had bought them from Hamlett for $30 each

and that these were all the tires that were involved between himself and Hamlett. Defendant was then taken over to the Pond automobile establishment where four tires which defendant had sold to Pond were recovered. Upon being asked what he had to say as to these four tires and reminded that he had said at his house that the nine tires there found were all that were involved, defendant said that these four tires had nothing to do with the matter and that he had gotten them from a soldier whose name he did not recall who had departed from the Territory a month previous to that time. Two more tires of the same size and make were recovered from a man named Langbehn who testified that he had purchased them from defendant on July 20 for $36.50 each. The evidence of the witness Ludwig, an expert who dealt in Goodyear tires, was that, at the time of the alleged crime and for two months prior thereto, tires of this size and make were unobtainable from dealers in Honolulu although such tires might occasionally be brought in by individuals. This witness also testified that defendant on the day of his arrest tried to sell to the witness three 35x5 Goodyear tires. From the foregoing, the tires were properly admitted in evidence, for while Major Ritchie could not positively swear that these tires were the identical ones that had been stolen from the government warehouse, this objection lies rather to the weight than to the competency of the evidence, and, as above indicated, there was ample evidence, both direct and circumstantial, to warrant the court's admitting the tires in evidence and leaving the question as to their identity to the consideration of the jury. Exception overruled.

Exceptions 7, 8 and 17 are to the trial court's permitting Major Ritchie to testify that the prosecution's witness, Hamlett, had previously made a certain statement inconsistent with his testimony at the trial.

Hamlett's testimony at the trial was to the effect that of the proceeds to be derived from the sale of tires by defendant, defendant was to retain all that he might realize over $25 per tire, and that Hamlett and Sergeant King were to divide equally the $25 which it was agreed they should receive from defendant for each tire. The transcript shows that Hamlett was questioned and answered as follows: "Q. I want to ask you a question, I want to ask you if on Monday of this week in my office in the presence of Major Ritchie, Captain Odean, Captain Gutherie, and Mr. Lake, if you didn't state that the division of that money was to be one-third, to Witt; one-third to you and one-third to King, if you didn't tell us that there at that time? Mr. Pittman. Objects, can't impeach their own witness. The Court. Is that the idea, to impeach the witness? Mr. Stafford. It is a question of surprise, our statute specifically provides for that, 2618. Objection overruled. Exception. The Court. Did you make the statement that counsel has put to you, in his office in regard to the division of the proceeds in the sale of these tires? A. I can't rightly say that I made it in that manner. Mr. Pittman. What is that? A. I can't rightly say that I made that statement, I don't remember. The Court. Which is the true fact as to the proceeds the realization from these tires? Mr. Pittman. Respectfully objects. The Court. I will withdraw the question. Mr. Stafford. Do you deny that you made that statement? Mr. Pittman. Objects. Objection sustained. The Court. If he did make that statement you can prove it later on if it becomes worth while. Mr. Stafford. I wouldn't have gone into this case without this man's statement. Mr. Pittman. I object to that, as prejudicial to the interests of the defendant. The Court. The jury have been instructed to disregard the statements of counsel, and their argument. I will instruct them again. Mr. Stafford. In

view of the statute I would like to have a direct answer to this question, will he deny that he didn't make that statement? The Court. He has testified he doesn't remember."

Thereafter, Major Ritchie was called to the stand and, over the objection of defendant, permitted to testify that at the place and time and in the presence of the parties mentioned, the witness Hamlett had stated that defendant was to dispose of the tires for whatever sum he could obtain, but that everything he received over $25 defendant was to get; up to $25 it was to be divided equally between defendant, Hamlett and Sergeant King. The objection urged in the trial court by counsel for the defense to the admission of this evidence was that, under the statute in this Territory, before the prosecution could attempt to impeach its own witness, the witness must be asked "a specific question, didn't you do so and so, or make statement so and so, that if the witness says 'no' he may then be impeached, they may then impeach their own witness, but where a witness said, as Hamlett did, 'I don't remember, but now these are the facts that I am testifying to now' he cannot impeach him." Section 2618, R. L. 1915, provides that "A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character; but may contradict him by other evidence, or (in case the witness shall in the opinion of the court * * * prove adverse), may by leave of such court or person prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he has made such statement."

In *Kwong Lee Wai* v. *Ching Shai*, 11 Haw. 444, appel-

lant's exceptions were to plaintiffs' counsel being allowed to ask a witness on direct examination whether he had not previously made a statement in regard to the location of a stream different from that which he made on the witness-stand. The trial court also allowed, over appellees' objection, another witness to be questioned as to what statement the former witness had previously made. This court said, p. 448: "The ground upon which these exceptions are based is that a party should not be allowed to impeach his own witness. No attempt was made to impeach the general credibility of the witness. It seems that plaintiffs' counsel were surprised by the witness making on the stand an adverse statement different from what he had said previously. Under such circumstances it was competent for the trial judge in his discretion to allow the question whether the witness had not previously made an inconsistent statement, and to allow proof that such inconsistent statement had been made. See Civ. L., Sec. 1421" (now Sec. 2618, R. L. 1915). In the case at bar no attempt was made by the prosecution to impeach the general credibility of the witness. Counsel for the prosecution expressed surprise at the testimony of the witness and the court, having heard the testimony of the witness and noted his demeanor and his manner of testifying, evidently was of the opinion that the witness was adverse. Under such circumstances therefore the court in the exercise of its discretion was authorized by the statute to permit, as it did, the prosecution to prove that the witness had made at the time specified a statement inconsistent with his testimony on the stand. The circumstances of the supposed inconsistent statement were mentioned to the witness with sufficient clearness and he was asked whether or not he had made such inconsistent statement. While the witness did not specifically deny having made the inconsistent statement his answers were so evasive

as to amount to a denial, and the court in admitting evidence that the witness had made such inconsistent statement did not, in our judgment, abuse the discretion vested in him under the statute. Exception overruled.

Exception 20 is that the trial court erred in admitting in evidence a certain copy of a bill of sale written by the witness Hamlett. Captain McDuffie, chief of detectives of Honolulu, testified that, on the night of the arrest of defendant, he had a conversation with him in regard to the tires, in which defendant claimed that he had a bill of sale for the nine tires that had been found at his place. Defendant first said to McDuffie that he did not have the bill of sale with him, then he looked through his pockets and found and handed to McDuffie a paper dated July 19, 1922, purporting to be a bill of sale by Hamlett to defendant of nine tires for the sum of $30 each, signed by Robert D. Hamlett. Without objection by defendant the bill of sale was received in evidence as prosecution's exhibit "E." At the time of the conversation between McDuffiie and defendant concerning the purported bill of sale, Hamlett was in McDuffie's office (the conversation between McDuffie and defendant having apparently been conducted in another room). McDuffie testified that he immediately went to Hamlett and dictated to him the contents of the bill of sale which Hamlett copied upon a sheet of yellow paper. McDuffie then called defendant into his office and asked Hamlett in defendant's presence whether he, Hamlett, had given defendant this bill of sale (referring to the original bill of sale, prosecution's exhibit "E"). Hamlett answered that he had not. Counsel for the prosecution offered in evidence the copy of the bill of sale which Hamlett had copied. Counsel for the defense objected to its reception on the ground that "it is not proper testimony, no foundation laid as a reason for introducing it, it was written

out of. the presence of the court and not in the presence of the jury." The objection was overruled, the paper received in evidence and counsel for defendant excepted.

The objection to the admissibility of the copy of the purported bill of sale on the ground that it was not written in the presence of the jury was without merit and was properly overruled for, if the copy was admissible for any purpose, the fact that it was made out of the presence of the jury was immaterial. Moreover any error, if such there was, in the admission of the copy of the bill of sale was subsequently cured by the testimony of the wife of defendant who testified for the defense that the original bill of sale was not written nor signed by Hamlett but by herself. According to Mrs. Witt her husband dictated to her over the telephone the bill of sale asking her to type the same. The typewriter not being at hand, Mrs. Witt wrote the document out in longhand and added the name of Hamlett at the end thereof. Mrs. Witt testified that the reason she wrote the name of Hamlett at the end of the bill of sale was that, had she typed it instead of writing it in longhand, she would have typed in Hamlett's name and that he could have signed over the typed name; hence it was her idea that in writing the document out in longhand she should follow a similar course and write in Hamlett's name thinking that he would affix his signature above the name already written in. The evidence of defendant's own witness thus indicating that he is not claiming that the original bill of sale was in the handwriting of Hamlett, the admission of a copy written by Hamlett was harmless. Exception overruled.

Exception 22 is to the denial by the trial court of defendant's motion for a directed verdict of acquittal. At the close of the case for the prosecution, defendant's counsel filed a motion that the court direct the jury to

render a verdict of not guilty, the motion urging sundry grounds for the same, the grounds now relied on by counsel being, that "the Territory of Hawaii has failed to identify the tires alleged to have been stolen * * *; that the indictment does not state the crime of receiving stolen goods or any other crime under the laws of the Territory of Hawaii, in that it does not allege: (1) That said automobile tires were received by the defendant knowing them to have been stolen and with the intent that the same should not be restored to the United States government and the United States government should be deprived and despoiled of the same. (2) That the defendant received said automobile tires from the original thief or embezzler. (3) The description of the property alleged to have been received by the defendant is indefinite and uncertain. (4) That said automobile tires were stolen from the parties alleged to have stolen the same by force or by the consent of said parties." (This ground is unintelligible) ; and "That Section 3946, under which said indictment was brought, does not state facts sufficient to constitute the crime of receiving stolen goods, or any crime, under the Territory of Hawaii, in that it fails to allege that the person must have knowledge of the fact that the goods were stolen or embezzled at the time of the receipt of the same."

The motion for a directed verdict of acquittal was properly overruled for the indictment was in the language of the statute relating to the offense of receiving stolen goods and fully and sufficiently set forth the offense with which defendant was charged.

Exception 27 is to the denial of defendant's amended motion for a new trial.

The record shows that the verdict of the jury was returned and entered on September 26, 1922. Thereafter, within the time allowed by statute, defendant filed a

motion for a new trial which motion was, after argument, denied. Several weeks later and after the expiration of the time during which a motion for a new trial might be made, defendant filed a motion praying that he might be permitted to file a motion for a new trial. This motion was granted by the court, whereupon defendant filed an amended motion for a new trial based upon all of the grounds that had been urged in his original motion and upon the additional ground of newly discovered evidence. After argument the amended motion was denied.

In our opinion the so-called amended motion for a new trial should not have been entertained by the trial court. The trial court having by its denial of the original motion for a new trial disposed of that, there remained nothing before the court to amend and the so-called "amended motion" was in fact nothing more than a second motion for a new trial; and as that motion was not filed within the period allowed by law, it was ineffective. In *Republic* v. *Saku Tokuji,* 9 Haw. 548, 553, two months after the trial, defendant filed a second motion for a new trial based upon alleged newly discovered evidence. This court held that, as the motion had not been filed within ten days of the trial, the motion was properly overruled. In *Briggs* v. *Mills,* 4 Haw. 450, defendant excepted to the verdict and moved for a new trial on the ground that the damages were excessive. The verdict was rendered October 11 and the court adjourned on the 29th. On November 7, counsel for defendant filed affidavits alleging the existence of newly discovered evidence. Objection being made to their being entertained, as being too late, this court said, p. 451: "On this point we hold that either there should be a separate motion for a new trial made, if it is founded upon the discovery of new evidence, or it should be mentioned among the other grounds in the original motion. Reference to the motion on file

discloses that newly discovered evidence is not mentioned, and no new motion was made. As to the time of filing such a motion, the statute, section 1,156 of the Civil Code, seems to us to be imperative. Ten days are allowed after the rendition of a verdict or judgment in which to file a bond and motion for a new trial 'for any cause by which by law a new trial may and ought to be granted.' Rule 6 requires affidavits to be filed in support of motions grounded on facts. We have no doubt that the court has the power to extend the time for filing additional affidavits in support of such a motion, but the motion and bond and some affidavit must be filed within ten days after the verdict." In *Cooney* v. *Furlong,* 66 Cal. 520, it was held that after the statutory time for giving the notice of a motion for a new trial had passed, the trial court had no jurisdiction to allow the original notice to be amended. In *State* v. *Mason,* 18 Mont. 362, after the time for serving notice of intention to move for a new trial had expired, the defendant, by leave of court, filed an amended notice of motion for a new trial. The appellate court said, p. 365: "As a notice of motion for a new trial this was too late, and in this respect did not conform to the requirements of the statute, and was unavailing. As said by this court in *Territory* v. *Hanna,* 5 Mont. 247: 'Appeals are matters of statutory regulation. There must be a substantial compliance with the statute, in order to confer jurisdiction upon the appellate court. The appellant is charged with the duty of perfecting his appeal in the manner provided by law, and error in this regard affects the jurisdiction of the appellate court.' * * * The next question is whether this amended notice is good as an amendment. But it does not amend any specification which was contained in the former notice. It does make a specification which seems to be good; for it states that the court erred in refusing to give

an instruction as requested by counsel for defendant, which instruction so refused was the same as the instruction given, and numbered 30, except that the words 'beyond a reasonable doubt' were contained in the offered instruction, but were stricken out of that as given. But the original notice of intention to move for a new trial did not pretend to specify any error as to instruction 30, or any error whatever as to refusing any instruction. The amended notice did not amend anything whatever that was contained in the original one. It introduced a wholly new specification. If it had been an amendment to anything contained in the original notice, or if it had specified properly and clearly anything that was insufficiently specified in the first, we would have before us another question; but, as the matter stands, it appears to us that the amendment seeks to make a specification entirely new, and which is unsupported by anything in the original notice."

We have examined all of the remaining exceptions and find them to be without merit. The exceptions are overruled.

*H. K. Ashford,* Second Deputy City and County Attorney (*W. H. Heen,* City and County Attorney with him on the brief), for the Territory.

*W. B. Pittman* (*Pittman & Brooks* on the briefs) for defendant.