**James H. MACLIN, Appellant,**

v.

**Mary A. HORNER, Appellee.**

Court of Appeals of Kentucky.

May 11, 1962.

Alex Berman, Louisville, for appellant.

Michael Hellmann, Louisville, for appellee.

CULLEN, Commissioner.

Mary Horner was a passenger in an automobile owned by Ben Fallender and being driven by his son LeRoy. It was involved in a collision with a truck driven by James Maclin, as a result of which Mary sustained injuries. In her action for damages she recovered judgment upon a jury verdict for $14,000 against the Fallenders and $6,000 against Maclin. All of the defendants appealed but after the appeal was perfected the Fallenders satisfied the judgment against them and their appeal was dismissed. There remains the appeal by Maclin, who complains of error in the instructions, excessive damages, and improper use of a chart on which the plaintiff's counsel computed damages.

The collision occurred in Louisville at the intersection of 18th Street (a two-way north-south street) and Chestnut Street (a one-way street for eastbound traffic). The Fallender car was going south on 18th Street and the Maclin truck was going east in the northern lane of Chestnut Street. Traffic at the intersection is controlled by a stop-and-go light and of course each driver maintained that the green light was in his favor.

In addition to instructing upon the rights and duties of each driver as governed by whether the light on his street was green or red, the court gave general instructions on the duty of lookout and the duty to drive at a rate of speed that was reasonable and prudent in regard to existing traffic and weather conditions. The appellant maintains that the only issue in the case was which driver had the green light; there was no issue of speed or lookout; and therefore the court erred in instructing on the latter. He relies on Lincoln Taxi Company v. Rice, Ky., 251 S.W.2d 867, in which this Court held that it was not error, under the particular circumstances of the case, to confine the instructions to the traffic light issue. On the other hand, the appellee relies on Roland v. Murray, Ky., 239 S.W.2d 967, in which it was held that

the giving of instructions on speed and lookout, in addition to a traffic light instruction, was not error.

◼ The two cases respectively relied on are entirely consistent in recognizing that the answer to the question of whether the instructions should go beyond the traffic light issue depends upon whether in the evidence the parties have raised any other issue. In the instant case the matter of lookout was brought up by questions which elicited the answers that neither driver saw the other's car until a moment before the collision. The question of speed was raised by evidence concerning the force of the impact of the two vehicles.

The verdict holding both drivers responsible must have been based upon a finding that one driver went through the red light and the other was negligent in not maintaining a sufficient lookout and not so controlling his speed as to avoid a collision. We think the evidence warranted such a verdict and, a fortiori, warranted the instructions on which the verdict was predicated.

◼ It is our opinion that in cases involving collisions at intersections controlled by a traffic light the fact that a *passenger* plaintiff is involved should be given consideration in determining whether issues of negligence have been raised other than the simple one of running the light. Ordinarily the passenger (to whom the host's negligence is not imputed) will be undertaking to raise every possible ground of negligence of both drivers. On the other hand, when the case is simply between the two drivers each will prefer to rest his case on the sole ground that the other ran the light, because if any other issue is raised both may lose on a finding of contributory negligence. So, in the instant case, we believe the trial court properly concluded that the plaintiff passenger had not confined the issues raised by her to the sole question of which of the defendant drivers had run the light.

◼ The next question concerns the alleged excessiveness of the damages. The plaintiff's evidence showed special damages of $2,000, so the remaining $18,000 of the verdict may be considered to have been for pain and suffering and for future impairment of earning power. The appellant contends that the evidence does not support such an award for those two items.

As concerns pain and suffering, Miss Horner's injuries consisted of a broken arm, loss of some teeth, lacerations of the knee, forehead and chin, and minor abrasions. One of the lacerations became infected and a piece of glass had to be removed from scar tissue over the left eyelid. She wore a cast on her arm for three months. Her period of hospitalization amounted to 12 days. She testified that she suffered pain for some three months after the accident but at the time of the trial was no longer experiencing any pain.

It will be sufficient for us to say that the evidence would support a substantial award for the pain and suffering that was endured, conceding that there was no proof of the prospect of future pain. See Williams v. Larkin, Ky., 268 S.W.2d 394, and Marcum v. Hedger, Ky., 303 S.W.2d 558, where awards of $12,000 and $9,000, primarily for pain and suffering from a broken limb and abrasions, were upheld.

With respect to loss of earning power, there was evidence that Miss Horner probably would have a permanent 10 percent disability of her body as a whole resulting from a limitation of motion of her right wrist. She was 23 years of age, with a life expectancy of 50.73 years. She had been employed at a bakery, earning from $35 to $73 per week depending upon the number of days she was called to work.

Even if it were considered·that Miss Horner's past earnings constituted the measure of the earning power she would have had for the future if physically unimpaired, the evidence would support an award for loss of earning power sufficiently large, when coupled ·with an acceptable

amount for past pain and suffering, to equal the amount of the verdict that was rendered here. We do not find the verdict excessive.

█ The final question concerns alleged impropriety in the treatment of a chart prepared and used by the plaintiff's attorney in his closing argument. The chart consisted simply of sets of multiplied figures by which the attorney indicated what he considered to be the *minimum* amounts allowable for pain and suffering and for loss of future earning power, added to the amounts claimed for special damages. The total amount was $10,720.

After the jury had deliberated for several hours they returned to the courtroom and asked permission to take the chart with them into the jury room. The court denied this request but allowed the jury to look at the chart in the courtroom and the foreman to copy down the figures. The court also, of its own initiative, brought before the jury in the courtroom a blackboard on which the attorney for the Fallenders had written some calculations.

The appellant maintains that the permitted second view and copying of the chart constituted prejudicial error. In our opinion it was error but not prejudicial.

The chart was in the case only as a permissible part of the closing argument of plaintiff's counsel. See Louisville & Nashville Railroad Co. v. Mattingly, Ky., 339 S.W.2d 155. While some of the figures used in the chart were in evidence, part of the figures represented only the attorney's own evaluation of $2.00 per hour for pain and suffering. To permit the jury to reexamine the chart and to copy it amounted to allowing the jury to rehear part of the closing argument. Ordinarily a jury will not be permitted to take a deposition into the jury room, Louisville, H. & St. L. R. Co. v. Morgan, 110 Ky. 740, 62 S.W. 736; the reason being that doing so could result in the jury's giving more weight or significance to the deposition than to the oral testimony heard on the trial. 53 Am.Jur.,

Trial, sec. 931, p. 664. The same principle is applicable to the question of allowing the jury to rehear part of the closing argument.

It is true that in Moore v. Beale, 20 K.L.R. 2029, 50 S.W. 850, it was held not error for the jury to take into the jury room a calculation by the plaintiff's attorney of the amount due in an action upon a commercial account. But there the court pointed out that there was nothing on the paper that had not been introduced in evidence. In the instant case the chart contained some figures representing the attorney's own evaluations.

While in our opinion it was error for the court to permit the jury to review and copy the chart we do not believe the error was prejudicial because, first, the court also directed to the jury's attention the blackboard calculations of one of the attorneys for the defendants so as to give the defendants "equal time," and second, because the verdict does not reflect that the chart calculations were a substantial influencing factor upon the jury.

The judgment is affirmed.