BARBARA JEAN LYON *v.* G. FRED BUSH III.

No. 4441.

MARCH 23, 1966.

CASSIDY, ACTING C.J., WIRTZ, LEWIS AND MIZUHA, JJ., AND CIRCUIT JUDGE KING ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiff sued defendant for a breach of promise of marriage. The jury found in a special verdict "one, that the plaintiff and defendant did enter into a contract to marry; two, that the defendant did breach said contract to marry; three, that defendant did seduce the plaintiff." The jury awarded plaintiff $5,806.50 "as and for actual or compensatory damages," and awarded plaintiff $10,000.00 "as and for exemplary or punitive damages." Defendant appeals from the judgment.

First, defendant argues that the common law action for a breach of promise of marriage "as applied to present day conditions" should be abolished by this court. We have recognized causes of action for a breach of promise of marriage since 1886. *Brown* v. *Bannister*, 14 Haw. 34; *Ayers* v. *Mahuka*, 9 Haw. 377; and *Dias* v. *Gilliland*, 5 Haw. 540. Any argument on the social desirability for

the abolishment of breach of promise actions should be addressed to the legislature.

Second, defendant contends that "the evidence does not support the verdict of the jury." In denying the motion for a new trial and judgment notwithstanding the verdict, the trial judge stated, "there is substantial evidence, far more than a scintilla, upon which a verdict could have been rendered" in this case. We agree. A careful review of the record clearly indicates that there was substantial evidence to justify and support the verdict returned by the jury. *Collins* v. *Shishido,* 48 Haw. 411, 405 P.2d 323; *Johnson* v. *Sartain,* 46 Haw. 112, 375 P.2d 229; *Territory* v. *Adelmeyer,* 45 Haw. 144, 164, 363 P.2d 979, 990; *Reynolds* v. *Van Culin,* 36 Haw. 556, 557; *Darcy* v. *Harmon,* 30 Haw. 12, 13.

Defendant's third specification of error reads: "The Court below erred in refusing to grant a new trial." A general assignment of error which does not "set out separately the particulars of each error intended to be urged," is insufficient and does not call for consideration by this court. Rule 3(b)(4), Rules of the Supreme Court. *State* v. *Kahua Ranch,* 47 Haw. 466, 468-69, 390 P.2d 737, 739; *Watumull* v. *Tax Comm'r,* 34 Haw. 84, 85-86; *Mid-Pacific Dress Mfg. Co.* v. *Cadinha,* 33 Haw. 456, 472-73; *Solomon* v. *Niulii Mill & Plantation, Ltd.,* 32 Haw. 571, 573-74; *Lemes* v. *Lusitana Society,* 32 Haw. 522, 525; *Smith* v. *Laamea,* 29 Haw. 750, 760.

Rule 3(b)(3) of the Rules of this Court requires briefs on appeal to present a concise statement of the questions involved and the manner in which they are raised. The scope of appeal is limited to the points set forth in or necessarily suggested by the statement of questions involved. *State* v. *Kahua Ranch, supra* at 469; *Miller* v. *Loo,* 43 Haw. 76, 80.

In examining defendant's statement of the questions involved in this appeal, we find *inter alia* the following:

"2. Did the Court below err in admitting to evidence letters and photographs which had no probative value and which were offered for the purpose of inflaming and prejudicing the jury against the defendant?

\*    \*    \*    \*    \*    \*    \*    \*    \*

"5. Can a jury's verdict stand when it appears that the jury has made unauthorized use of a party's argumentative exhibits not in evidence?"

Since there is no statement indicating the manner in which they were raised, the foregoing questions do not comply with Rule 3(b)(3). Nevertheless, and despite the insufficiency of the general specification of error that "the court below erred in refusing to grant a new trial," we will consider the points set forth or necessarily suggested by questions numbered 2 and 5.

The defendant argues that the court erred in not granting a new trial "because the verdict and judgment below were the product of passion and prejudice," based upon "inflammatory pictures and letters that have no logical relevance to any material issue in the case, but whose sole purpose was to prejudice the jury against defendant by attacking his morals."

Plaintiff testified that defendant's proposal of marriage and its acceptance were made in a trans-pacific telephone call to her home in Kentucky on February 2, 1961. She arrived in Honolulu on August 15, 1961. On September 17, 1961, defendant, who lived on Maui, came to visit her in Honolulu. It was during this visit that defendant instructed plaintiff, who was naive in such matters, in sexual practices which fell just short of intercourse. In October 1961, defendant's letters detailed the sex acts

desired and anticipated by defendant and described defendant's sexual condition when he wrote or spoke to her over the telephone. In November and December 1961, plaintiff made two week-end trips to Maui during which plaintiff and defendant engaged in sexual intercourse. On December 27, 1961, defendant flew to California and on December 30, 1961, proposed to another woman whom he was also courting and whom he subsequently married. On January 16, 1962, defendant wrote to plaintiff and told her he did not love her and asked her to forgive him. Plaintiff, ignorant of the other courtship and engagement, attempted a reconciliation which failed.

The passionate letters of defendant and three photographs of defendant which were sent by defendant to plaintiff showing him in lewd and pornographic positions were admitted in evidence over objections of defendant. Defendant argues that the effect of these "exhibits can be conservatively described as shocking and revolting, and it may be conceded that they constitute an arresting indictment of his then moral character. It is impossible to view these exhibits without experiencing an immediate and strong reaction against the Defendant for having written the letters and made the pictures."

The relationship between plaintiff and defendant was principally established through correspondence. Plaintiff offered the letters and photographs as evidence of enticement, inducement, solicitation, and subsequent seduction after promise of marriage and as corroboration of the subject matter of numerous telephone calls which constituted the other major means of communication between the parties.

After a careful examination of the letters and photographs sent by defendant to plaintiff in this case, we are of the opinion that they are evidence, in addition to the testimony of plaintiff and the other evidence, from which

the jury could determine whether there was a promise to marry, whether plaintiff was seduced, and whether defendant's course of conduct entitled plaintiff to exemplary or punitive damages. Exclusion of the letters and photographs on the ground that they may be prejudicial and inflammatory, because of their salacious and reprehensible nature, would have precluded proof in this case, after the promise of marriage, of the nature of defendant's solicitation, enticement and persuasion which culminated in the two acts of seduction. See *State* v. *Molina,* 47 Haw. 391, 403-05, 390 P.2d 132, 139-40; *Territory* v. *Josiah,* 42 Haw. 367, 381-85; *Territory* v. *Joaquin,* 39 Haw. 221, 228.

Defendant also contends that a new trial should be ordered "because the jury was permitted to use [during deliberations] exhibits not duly offered and admitted during the trial." This, defendant asserts, is prejudicial error since the effect was to allow plaintiff to reargue her case for damages without a similar opportunity being given the defendant.

These "exhibits," hereinafter referred to as "tables," consisted of sheets of paper tacked to a blackboard, on which appeared a compilation of plaintiff's alleged expenditures made in reliance on the alleged promise to marry. Plaintiff's counsel noted each expenditure on the sheets of paper as the figure was introduced into evidence; these compilations were then used by plaintiff's counsel as an illustrative aid[1] in his closing argument to the jury. Essentially, the compilations represented uncontradicted evidence of plaintiff's claim for compensatory damages, a fact admitted by defendant in oral argument and borne out by the transcript. Defendant objected to the use of

---

[1] "THE COURT: Are you going to put this in evidence?
"MR. COREY: Well I feel I could put this in evidence but I am only going to use it by way of illustration only so the jury can make up its own mind. I don't wish it to be put in evidence but I will use it as an illustration."

the compilations only once on the grounds of expediency.[2]

After the verdict was rendered in plaintiff's favor, and at the hearing on defendant's motion for judgment notwithstanding the verdict or in the alternative a new trial, defendant called the jury's foreman as his witness. The plaintiff objected on the ground that a juror could not be used to impeach his own verdict. After defendant made his offer of proof,[3] the court permitted defendant to directly examine the foreman of the jury to explicate the situation before ruling on the question of "whether or not we should permit the testimony of a juror to testify as to some misconduct on the part of the jury." It appeared on direct examination of the foreman that the jurors knew they couldn't take "evidence" into the jury room because the bailiff so informed the foreman when he first came out to look at the tables. However, the bailiff permitted him and another juror to read off the itemized figures to the other members of the jury sitting in the jury room located across the hall. The foreman stated that this was done for the express purpose of helping the jury arrive at damages since " * * * nobody knew exactly what to set the price, the court did not put the price so we went down and where we figured it wasn't fair for the defendant to pay that we strike it out, so we arrive at five thousand something from the seven thousand."

---

[2] "MR. LANGA: I object to counsel writing, I don't think it is proper. I never heard of counsel going and taking evidence and reproducing it on the board. If it is introduced in evidence it is for the jury to remember without counsel going ahead and writing on the board and wasting the time of the court. There is no necessity for such a thing. It is entirely out of order."

[3] "MR. LANGA: During the course of deliberations a juror came out of the jury room for the purpose of examining the tables which counsel for plaintiff had agreed with the court not to offer in evidence, and those are the listings of moneys and so forth which counsel for the plaintiff put on sheets of paper on the blackboard. And in the course of deliberations, for the purpose of his deliberations, the juror examined those documents."

The jury had returned a verdict for $5,806.50 "actual or compensatory damages" although plaintiff's compilations listed her special damages alone at $7,547.31. From the foreman's testimony it is evident that the $5,806.50 consisted entirely of special damages.

Having heard the foreman's testimony, the trial court ruled that on the basis of his testimony and all the evidence no prejudice resulted from the alleged misconduct.

The question presented is, did prejudicial error occur when, during deliberations and for the purpose of aiding the entire jury in arriving at its verdict for compensatory damages, a juror reviewed a non-evidentiary table showing plaintiff's analysis of her special damages, while out of the presence of counsel and the court?

We have held that even where trial error occurs, whether in the form of the erroneous admission or rejection of evidence, or in the instructions, there will be no reversal where on the record as a whole no prejudice results. *Berkson* v. *Post*, 38 Haw. 436; *Territory* v. *Witt*, 27 Haw. 177, 178-80; *Territory* v. *Chang Tai Kun*, 26 Haw. 133; *Ahana* v. *Insurance Co. of North America*, 15 Haw. 636, 640-41. Our rationale has been that where the record shows that the "errors of trial did not influence the final decision of the case to the prejudice of the defendant," a new trial is unnecessary. *Berkson* v. *Post, supra* at 439. Under H.R.C.P., Rule 61[4] we must disregard any error or defect in the proceeding which does not affect the substantial rights of the complaining party.

Absent a statute or rule of court, non-evidentiary ex-

---

[4] *"Harmless Error.* No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

hibits may not be used by the jury in its deliberations. *City & County* v. *Bishop Trust Co.*, 48 Haw. 444, 472-75, 404 P.2d 373, 390-91; *Shane* v. *Warner Mfg. Corp.*, 229 F.2d 207, 209 (3d Cir. 1956), *appeal dismissed* 351 U.S. 959. See *Public Operating Corp.* v. *Weingart*, 257 App. Div. 379, 13 N.Y.S.2d 182; *Hatfield* v. *Cheaney*, 76 Ill. 488; *Keeney* v. *Commonwealth*, 345 S.W.2d 481, 483 (Ky. 1961).

> "The law is well settled that it is improper to permit the jury in arriving at its verdict to consider papers or documents not in evidence and which tend to influence the verdict of the jury. * * * Parties to a litigation should have their causes tried upon competent and relevant evidence submitted in open court where each side is afforded a fair opportunity of cross-examination. *Documents not received in evidence may not be considered by a jury in their deliberations and a verdict predicated thereon must be set aside unless it can be shown that the jury could not have been influenced thereby.*" (Emphasis added). *Public Operating Corp.* v. *Weingart, supra* at 383.

In *Brooks* v. *Temple Lumber Co.*, 105 S.W.2d 386 (Texas 1937), the plaintiff had sued the defendant for illegally cutting and removing timber from plaintiff's land. The defendant's counsel wrote on a blackboard the number of feet of timber cut and three dates on which the cutting took place, making the comment in his argument to the jury that the figures reflected the testimony given. It was later discovered that, while deliberating in a room adjacent to the courtroom, some member of the jury went into the courtroom and took notes of the figures on the board; the jury used these notes and accepted the figures as true in returning their verdict. The only argument made as to the prejudice suffered was that there was a "wide difference" in the testimony as to the amount of

timber cut and when.  The appellate court found this argu-
ment unsupported; there was no conflicting evidence re
these dates and figures.

*Maclin* v. *Horner*, 357 S.W.2d 325, 328 (Ky. 1962),
involved the use of a chart prepared by plaintiff's attorney
and used in his closing argument.  The chart consisted of
"sets of multiplied figures" of plaintiff's estimate of the
minimum amounts allowable for pain, suffering, and loss
of future earning power which were added to the amounts
claimed for special damages.  After the jury had deliber-
ated for a few hours they returned to the courtroom and
asked permission to take the chart with them into the
jury room.  Permission was denied by the trial judge but
he allowed them to look at the chart in the courtroom and
permitted the foreman to copy down the figures.  The trial
judge also, of his own initiative, brought before the jury
a blackboard on which the defendant Fallender's[5] attorney
"had written some calculations."  Although the court
stated it was error to permit the jurors to review and copy
the chart because it amounted to allowing the jurors to
rehear part of the closing argument, giving it more weight
or significance than it merited, it also held that error was
not prejudicial because (1) the court gave the defend-
ants "equal time" by bringing one of their calculations to
the attention of the jury and (2) the verdict did not reflect
that the chart calculations were a substantial influencing
factor upon the jury.

It should be noted that the "equal time" mentioned
by the Kentucky court was applicable only to defendant
Fallender whose appeal was dismissed after satisfaction
of judgment prior to the decision.  It also should be noted

---

[5] There were two defendants. Defendant Fallender was the owner
of the automobile in which plaintiff Horner was a passenger.  Maclin
was the driver of the truck involved in the collision with the Fallender
automobile.  The appeal by Fallender was dismissed when he satisfied
judgment after the appeal was perfected.

that while some of the figures used in the chart of plaintiff's attorney were in evidence, other figures represented the attorney's own evaluations which were not in evidence but part of his closing argument.

In an earlier case, the Kentucky court held that it was not error for the jury to take into the jury room a calculation by the plaintiff's attorney of the amount due in an action upon a commercial account, and pointed out that there was nothing on the papers that had not been introduced in evidence, and that the appellant was not prejudiced because the figures themselves were not in controversy. *Moore* v. *Beale,* 20 Ky. L. Rep. 2029, 50 S.W. 850.

*Public Operating Corp.* v. *Weingart, supra,* represents a different point of view. The court held that if it were unclear whether prejudice did occur, it would reverse and remand for a new trial. But this is not our situation. The defendant never once contradicted the evidence introduced, maintaining throughout the trial that there was no promise to marry and so the alleged expenditures were speculative and could not be considered, and even if there were a promise these expenditures did not constitute damages because most of the items were still of use to plaintiff. Both of these theories were taken into consideration by the jury in its verdict. When it found that the evidence proved a promise to marry, defendant's first objection was overcome. As to the second objection, the foreman testified that the jury used the compilations for the purpose of aiding them in eliminating items because they felt defendant should not be held responsible for all the expenditures alleged. In view of the use made of the tables, the defendant actually benefited from the unauthorized use of them. We hold that there was no prejudice since the appellant was benefited, not injured by the conduct of the jury.

We note here plaintiff's argument that it was improper to permit the juror to testify, absent extraordinary circumstances sufficient to justify a departure from the general rule that a juror may not ordinarily impeach his own verdict. *Territory* v. *Wright,* 37 Haw. 40, 47-48; *Carpenter* v. *Honolulu Rapid Transit Co.,* 35 Haw. 761; *Howland* v. *Jacobs,* 2 Haw. 155, 156-57; *cf., Hyde* v. *United States,* 225 U.S. 347, 381-84; *McDonald* v. *Pless,* 238 U.S. 264; *Kincaid* v. *Wade,* —— Kan. ——, 410 P.2d 333, 338. It is unnecessary for us to rule on this question. The very testimony to which plaintiff objected also showed that there was no prejudicial error. It appears that there was independent evidence available which defendant could have produced had the trial court required it, namely the testimony of the bailiff. Such testimony would not have disclosed the manner in which the tables were used in the jury's deliberations and in arriving at a verdict, in consequence of which this court might have been left in the position of the court in *Public Operating Corp.* v. *Weingart, supra,* 257 App. Div. 379, 13 N.Y.S.2d 182. But defendant, who adduced the testimony of the juror over plaintiff's objection, cannot complain that the sanctity of the jury room was invaded, and plaintiff likewise is in no position to complain since the testimony thus adduced showed there was no prejudicial error.

We need not consider defendant's argument as to excessiveness of damages, since appellant has not properly complied with the provisions of Rule 3(b)(3) and (4) of this court. Defendant does not raise this point in his statement of questions involved as he did with reference to the admission of letters and photographs in evidence and the jury's unauthorized use of plaintiff's exhibits not in evidence, nor is it assigned as error in his specification of errors.

We have carefully considered other specifications of error and find them without merit.

Judgment affirmed.

*Sanford J. Langa* (*Crockett & Langa* on the briefs) for defendant-appellant.

*Ralph E. Corey* (*Clark & Corey* on the brief) for plaintiff-appellee.

---

## CONCURRING OPINION OF WIRTZ, J.

While I seriously doubt the advisability of the policy of allowing breach of promise actions in this day and age of feminine emancipation, I only too well realize that the determination of such policy is a legislative rather than a judicial function and until our legislature, as so many other state legislatures have done, directs otherwise, this court is bound by precedent. And while I find the amount of punitive damages awarded to be inequitable and harsh, still the evidence, in the light of the pertinent instructions given to the jury (none of which was challenged for error), permitted such a prohibitive award.

Consequently, I am reluctantly constrained to join in and concur with the opinion of the court.