LINCOLN TAXI CO., Inc. et al. v.
RICE et al.

LINCOLN TAXI CO., Inc. et al. v.
WOODS et al.

LINCOLN TAXI CO., Inc. et al. v.
PARTEE et al.

LINCOLN TAXI CO., Inc. et al. v.
RYAN.

Court of Appeals of Kentucky.
Oct. 10, 1952.

Mayer, Cooper & Kiel, Louisville, for appellant.

Chas. W. Anderson, Jr., Louisville, Harry S. McAlpin, Woodward, Hobson & Fulton, Louisville, for appellee.

CULLEN, Commissioner.

As a result of a collision between a taxicab and a Ford convertible, at the intersection of Broadway and Eighth Street in Louisville, around 1:30 p. m. on Memorial Day, 1949, personal injuries were received by three passengers in the taxicab and by the driver of the Ford and his wife. The three passengers sued the taxicab company and its driver, and the driver of the Ford. The latter and his wife sued the taxicab company and its driver. The jury found that the taxicab driver was solely responsible, and judgments were entered against him and his company in favor of the three passengers and the owner of the Ford and his wife. The taxicab company and driver have appealed from the judgments in favor of two of the passengers and the driver of the Ford, and have moved for an appeal from the judgment in favor of the third passenger, which was for only $405. The judgment in favor of the Ford driver's wife was below the jurisdictional amount for an appeal. There is no cross appeal.

Traffic at the intersection in question is controlled by electric signal lights. Upon the trial, each driver claimed that the green light was in his favor, and that the other "ran" the red light. The taxicab was going north on Eighth Street, and the Ford was going west on Broadway, and the collision occurred in the northeast corner of the intersection. The Ford struck the taxicab in the side. Broadway is a six-lane street, with three lanes for traffic in each direction, and Eighth Street is a two-lane street, approximately 36 feet wide.

The case was tried on the issue of which driver had the green light in his favor, and the jury found that the Ford had the green light. On appeal, the taxicab company and driver contend that error was committed: (1) In permitting the police officers who investigated the accident to testify that they advised the Ford driver to swear out a warrant for the arrest of the taxicab driver, and that he was later arrested on such a warrant; (2) in permitting the police officers to testify as to an experiment conducted by them, which convinced them that the Ford had the green light; (3) in phrasing the instructions so as to fix liability on the driver who went through the red light, with no mention of duties concerning lookout, control and speed, and with no mention of proximate cause.

We think that error was committed in the admission of the testimony concerning the arrest of the taxicab driver. The police officers were not eyewitnesses of the accident, but arrived later pursuant to a radio call. Based upon their interviews with the parties and witnesses, and the experiment which will later be described, they came to the conclusion that the taxicab driver was at fault. They were permitted to testify that they advised his arrest, and that he later was arrested on a charge of reckless driving, under a warrant sworn out by the Ford driver.

In Denny v. Rudy, 275 Ky. 467, 121 S.W. 2d 951, this Court held that it was prejudicial error, in an automobile negligence case, to permit an investigating officer to testify that after his investigation he did *not* arrest one of the participants. We said that this was the equivalent of permitting opinion evidence, based largely on hearsay, and was highly incompetent and prejudicial. The same reasoning would require the exclusion of testimony, such as in the case

now before us, that the investigating officer arrested or advised the arrest of a participant in the accident.

In 61 C.J.S., Motor Vehicles, § 516 m, page 259, it is stated that evidence relative to the arrest of the driver of a motor vehicle on a criminal charge arising out of an accident is ordinarily inadmissible in a civil action between the parties to the accident. This statement is supported by citation of cases from Vermont, New Hampshire and California. The Vermont cases, Fitch v. Bemis, 107 Vt. 165, 177 A. 193, and Paul v. Drown, 108 Vt. 458, 189 A. 144, 109 A.L.R. 1085, suggest that if the arresting officer was an eyewitness of the accident, evidence as to an arrest made by him would be admissible as part of the res gestæ, but otherwise evidence as to an arrest is inadmissible because it is hearsay or because it is not relevant to show either negligence or proximate cause.

The error in admitting the evidence as to the arrest of the taxicab driver, in the case now before us, clearly was prejudicial, because the two police officers were the principal witnesses relied upon by the plaintiffs, and their opinion that the taxicab driver went through the red light was bound to carry great weight with the jury.

The appellees maintain that any error with respect to the evidence of the arrest was waived when the taxicab driver, on direct examination on his own behalf, went into the matter of what happened following his arrest, and testified that the criminal charge eventually was dismissed. We do not agree. Here the appellants were put in an unfavorable position by reason of the admission of the testimony as to the arrest, and they should not be precluded from relying upon that error merely because they sought to minimize the prejudicial effect of the testimony by showing that the arrest did not result in a conviction. It is stated in 5 C.J.S., Appeal and Error, § 1735 c, page 1019, that an error in admitting evidence is not cured by the offering of evidence in rebuttal thereof by the objecting party.

The judgments against the appellants must be reversed because of the error above discussed. However, we will consider the other errors claimed by the appellants, in order that the trial court may be guided properly in the event of a new trial.

The experiment complained of by the appellants was conducted by the police officers on the basis of statements made to them by the Ford driver. He told them that at the intersection of Broadway and Seventh Street, immediately to the east of the one at which the collision occurred, he stopped for a red light approximately two car lengths back of the intersection, there being two cars in front of him; that when the light changed he put his car in motion and accelerated up to 20 or 25 miles per hour, and when he reached the intersection with Eighth Street the light was green in his favor. The policemen were permitted to testify that they took their police car to the intersection of Broadway and Seventh Street, placed the car at a point two or three car lengths back of the intersection, waited until the light changed from red to green, started their car in motion and gradually accelerated up to 25 miles per hour, and when they reached a point some 60 feet east of the intersection with Eighth Street, the light at that intersection changed from red to green. The policemen testified that they repeated the experiment with the same result, and they came to the conclusion that the Ford must have had the green light. One of the policemen said: "That was the only way we had to determine who we figured run the light."

It is our opinion that the evidence of the experiment was improperly admitted, because there were so many uncertain factors involved as to render the experiment unreliable. There was no evidence as to the length of the block between Seventh and Eighth Streets, and no evidence as to the time interval for which the lights were set at the intersection of Broadway and Eighth Street. The automobile used in the experiment was not the same as the one involved in the accident, and there could have been a substantial variance between the speedometers. If there were two automobiles in front of the Ford at the Seventh Street intersection, the time required for the drivers of those automobiles to become aware of the change of the light from red

to green, and to get their automobiles under way, may have been substantial, with the result that the police car, with no automobiles in front of it, may have entered the Seventh Street intersection much more quickly than the Ford did. In addition, the concepts of the police officers and of the Ford driver as to what constituted a normal acceleration may have varied materially. Also, a difference of five miles per hour in speed would make a difference of several seconds in the time required to travel a city block. .

■ It has been written that the criterion for the admissibility of evidence of experiments is whether such evidence tends to enlighten the jury and enable them more intelligently to consider the issues presented. 32 C.J.S., Evidence, § 587, page 440. Also, that experiments are admissible where they afford evidence more satisfactory or reliable than oral testimony. 20 Am.Jur., Evidence, sec. 755, p. 627.

■ It is our opinion that the experiment did not meet the above tests for admissibility, and that the desired corroboration of the Ford driver's testimony could have been achieved by more satisfactory and reliable evidence.

The instructions were simply that if the jury believed the light was red on Eighth Street, they should find against the taxicab company and driver, and if they believed that the light was red on Broadway, they should find against the Ford driver. The appellant contends that the instructions should in addition have covered duties as to speed, lookout, control and ordinary care generally, and should have submitted to the jury the question of proximate cause.

In Roland v. Murray, Ky., 239 S.W.2d 967, 970, which also involved a collision at an intersection where traffic was controlled by signal lights, the trial court gave general instructions concerning lookout, control and ordinary care. On appeal, it was contended that the instructions submitted extraneous issues, and should have been confined to the simple issue of who ran the red light. In rejecting the contention this Court said:

"We cannot agree with appellant that this instruction submits extraneous issues or matters not in dispute. A green light, or 'go' signal, is not a command to go regardless of other persons or vehicles that may be already within the intersection, but is a qualified permission to proceed carefully in the direction indicated. * * *"

We do not consider the Roland case to be authority for the proposition that in every intersection case where there is an issue as to which party ran the red light, general instructions should be given. If the parties should so frame the issues on the trial that the only negligence charged against either party consisted of running the red light, the instructions given in the case before us would be adequate. There would be no need to instruct on proximate cause under those circumstances, because the accident would clearly as a matter of law be a proximate result of the violation of the statutory duty.

■ In the case before us, there was evidence that the Ford driver was exceeding the speed limit, and that he did not see the taxicab until it was directly in front of him. However, the taxicab company and its driver did not predicate their case on any negligence concerning speed and lookout, but insisted throughout that the Ford went through the red light. Under these circumstances, we cannot say that the instructions were erroneous. However, if upon another trial an issue is made as to whether one driver, though having the light in his favor, negligently failed to observe other duties owed by him, instructions should be given concerning those duties, if requested, and the question of proximate cause should be submitted to the jury.

■ Although we have come to the conclusion that the judgments appealed from must be reversed, this does not require a reversal of the judgments relieving the Ford driver from liability, in the actions brought by the three taxicab passengers, since there is no appeal seeking to have those judgments reversed. See Martin v. Ackman, 270 Ky. 640, 110 S.W.2d 437;

Carter v. Ward, 251 Ky. 774, 65 S.W.2d 996; McGee v. Vanover, 148 Ky. 737, 147 S.W. 742. The appellants are not in a position to complain of the release of the Ford driver from liability, because as joint tortfeasors, the appellants could have been sued separately without joinder of the Ford driver. See Civil Code of Practice, § 373.

On the appeals granted below, the judgments against the taxicab company and its driver are reversed, and on the motion for an appeal the appeal is granted and the judgment against the taxicab company and its driver is reversed, with directions in each case to grant a new trial.